**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 2, 2018**

# In the Court of Appeals of Georgia

A17A1401. EDEN v. EDEN et al.

BRANCH, Judge.

Jill Eden appeals the denial of her second motion for contempt arising out of a quiet title action and subsequent settlement agreement. Because we find that the trial court made an unauthorized finding while denying Eden's motion for contempt, we vacate the trial court's order as to that finding.

The record shows that in 2007, Jill's brother John proposed to Jill that she build a home on property that he and his wife owned in Barrow County. Jill alleged that John also promised to deed her a portion of his property for that purpose. After Jill constructed the home at her own expense, a dispute arose regarding title to the relevant property, and Jill filed the present action to quiet title against John and his wife (the Edens). The trial court eventually ordered a settlement conference following

which the parties entered into a written settlement agreement. As the court explained in a subsequent order, the settlement agreement provided, among other things, that the Edens were required to (1) deed to Jill a life estate and an access agreement to the subject property, (2) provide property insurance and pay taxes on the property during Jill's life, and (3) pay Jill $700 per month during her lifetime in consideration of the improvements she made to the property. The settlement agreement also required the Edens' counsel to draft the necessary documents.

Jill later filed a motion to enforce the settlement agreement, and on October 5, 2015, the trial court granted the motion and expressly made the settlement agreement the order of the court. The trial court held that, "[b]y its express terms as approved by the parties, the Agreement constitutes a final resolution of all the issues in this case, and its terms became binding on the parties at the time of signing." The agreement provided that it was the entire agreement between the parties and that it could not be modified "except in writing executed by all parties with the same or greater formalities as this Agreement." It also provided for attorney fees and costs if a party had to employ an attorney to enforce any of its provisions. Neither party appealed the court's order enforcing the settlement agreement.

After the Edens failed to comply with any of the above provisions of the court's order, Jill filed her first motion for contempt, as well as a motion for attorney fees and expenses of litigation. At the March 1, 2016 hearing on those motions, the Edens admitted that they failed to comply with provisions of the trial court's order, and consequently, the trial court found them to be in contempt of that order. The court issued its order on March 14, 2016 "nunc pro tunc March 1, 2016," the date of the hearing. The court held that the Edens had failed to deliver the required access agreements and failed to pay $9,260.97 of the required payments; the court ordered that the Edens be incarcerated if they failed to purge the contempt for these items and awarded attorney fees associated with Jill's motion for contempt and her defense of a motion to recuse. With regard to the Edens' obligation to deed a life estate to Jill, however, the court found that the Edens had deeded the subject property to Jill in fee simple, rather than as a life estate. And the court noted in the above-mentioned attorney fee award that it "gave credit to the [Edens] for their transfer of the subject property to [Jill] in fee simple and does not award any attorney's fees on [Jill's] Motion to Enforce [the settlement agreement]." The Edens purged themselves of contempt as required by the order. Neither party appealed the court's March 14, 2016 ruling on this first motion for contempt.

One month later, Jill filed a second motion for contempt on the grounds that the Edens failed to make a $700 payment in April 2016 and failed to execute an unspecified "quitclaim deed"; she later amended the motion to include two more missed payments but removed any reference to a quitclaim deed from the requested relief. Following oral argument, on October 6, 2016, the trial court issued its order declining to hold the Edens in contempt on the ground that contempt is not an authorized remedy when seeking to enforce a purely monetary obligation. But the court also stated that "that determination does not put an end to this litigation." The court went on to make a second ruling — that no further $700 payments were required. Is so doing, the court stated that it recognized that a contempt order cannot modify an existing order, and that therefore "to resolve this dispute the court must interpret the Mediation[/settlement] Agreement and the October 5[, 2015] order." The trial court noted that the settlement agreement and the prior court orders were "silent regarding the impact of unifying title in [Jill] on future payments." Nevertheless, the court found that both the mediation agreement and the October 5 order "tie" the $700 payment obligation to the life estate and constituted compensation for Jill having made improvements to the property, which improvements would inure to the benefit of the Edens at the end of Jill's life. The court then found that "delivery of the Deed

4

was done in open court [at the March 1, 2016 hearing] with all parties and counsel present." The court therefore concluded that by accepting the fee simple deed in open court without protest, Jill "acquiesc[ed] by silence [to] the transfer of title and [to] a modification of the settlement agreement." The court thus concluded that the Edens' obligation to make monthly $700 payments to Jill had been eliminated and therefore, for this second reason, denied Jill's second motion for contempt.

Jill appeals the trial court's October 6, 2016 order. She contends the trial court erred by modifying the settlement agreement and final enforcement order in response to the Edens' transfer of the fee simple deed, by making that modification outside the term of court of the original order, and by not finding the Edens in contempt and awarding attorney fees.

1. Jill contends the trial court erred by modifying the final enforcement order by determining that no additional $700 payments were required as a result of the Edens' transferring to Jill fee simple title to the subject property. We agree.

First, however, we hold that the trial court was correct that contempt was not an available remedy for the Edens' failure to make $700 payments under the second motion for contempt. In that motion as amended, Jill sought to enforce a money

5

judgment only.[1] And "[i]n the absence of statutory authority or other extraneous circumstances [not present here], contempt is not an available remedy to enforce a money judgment." *McKenna v. Gray*, 263 Ga. 753, 756 (438 SE2d 901) (1994) (contempt not available against estate for failure to pay full amount of required monthly payments owed under a structured settlement agreement); *Hill v. Paluzzi*, 261 Ga. App. 123, 126 (2) (581 SE2d 730) (2003) (contempt not authorized to enforce a sum owed under a consent decree). Thus the trial court correctly denied Jill's second motion for contempt on this ground.

The court erred, however, in finding that future $700 payments were no longer required. "In a contempt proceeding, a court may interpret and clarify an existing order but may not modify the terms and obligations already set forth." *Harvey v. Lindsey*, 251 Ga. App. 387, 390 (1) (554 SE2d 523) (2001), citing *Millner v. Millner*, 260 Ga. 495, 497 (2) (397 SE2d 289) (1990), and *Gallit v. Buckley*, 240 Ga. 621, 626 (3) (242 SE2d 89) (1978).

---

[1] Although Jill contends that in her second motion for contempt she sought contempt for the Edens' failure to execute an unspecified quit claim deed, she specifically removed any mention of a "quitclaim deed" from the requested relief, the settlement agreement and enforcement order do not reference any quitclaim deeds, and she does not raise any enumerations of error regarding a quitclaim deed on appeal.

To determine whether an order has been clarified, as opposed to being modified, the test is whether the new order is a reasonable clarification or so contrary to the apparent intent of the original order as to constitute a modification. The intent is found by looking at the content of the order and the context in which it was created.

*Harvey*, 251 Ga. App. at 390 (1) (footnotes omitted). Here, the trial court, in its October 6, 2016 order, purported to interpret or clarify the settlement agreement and the October 5, 2015 order enforcing that agreement. It did so in light of single factual development — that the Edens had unilaterally decided to grant Jill fee simple title instead of a life estate. Is so doing, however, the trial court impermissibly modified the settlement agreement.

As the trial court held in the October 2015 enforcement order, the settlement agreement set forth the entire agreement between the parties, which included the Edens granting Jill a life estate and certain easements, paying for insurance and taxes on the transferred property, and paying Jill $700 a month in consideration of the improvements she made to the property. As stated in the October 6, 2016 order on appeal, the trial court is correct that neither the settlement agreement nor the enforcement order refers in any way to the possibility of the Edens transferring a fee simple deed rather than a life estate. Indeed, the parties had determined for

7

themselves how they wished to settle the quiet title action, and that resolution included a life estate and a payment stream as set forth expressly in the settlement agreement.

Then, as the transcript of the March 1, 2016 hearing makes clear, the Edens unilaterally[2] executed and recorded a fee simple deed prior to the hearing and then brought the original deed to the hearing. At the hearing, the Edens' counsel argued that by deeding the property to Jill, the Edens had increased Jill's net worth by perhaps $138,000 as of January 11, 2016 (the date the deed was recorded), and that therefore, the Edens were not in contempt or they had purged that contempt. Jill's counsel acknowledged that he had received a copy of the deed prior to the hearing and acknowledged that by deeding the subject property in fee simple, the Edens had "[m]ore than substantially complied with [the] provision [that the Edens deed a life estate to Jill]." But, as is also clear in the transcript, the parties never discussed or

---

[2] The Edens' counsel explained that he had proposed a solution to his clients that he admitted had not been previously discussed, that is that the Edens simply "give [Jill] the land to put her house on." His clients agreed, and they signed a warranty deed to Jill and obtained a title policy on the property. The Edens' counsel stated that he sent a copy of the deed and policy to Jill's counsel, that he had the deed recorded, and that he brought the original deed to the hearing. He continued, "[t]his is Jill's deed . . . [a]nd I'm prepared to give it to her today or her lawyer." The Edens' counsel summarized, "What [John Eden] did, at my suggestion, is to go ahead and surrender the remainder."

negotiated a change in the original settlement agreement based on a fee simple deed instead of a life estate. The parties never discussed exchanging the fee simple deed for a release from the $700 payment stream obligation. And Jill's counsel argued that given the existence of an enforceable written agreement, the Edens were not entitled to an equitable remedy arising out of their having deeded the property in fee simple to Jill. Finally, in announcing its ruling in open court, the court stated that even though the Edens had given Jill fee simple title to the subject property rather than a life estate, "[I]t doesn't change the Edens' obligations"; this ruling, however, was not expressly included in the trial court's written order of March 14, 2016. The court also stated, and reiterated in the March 14, 2016 written order, that it had "significantly reduced [the attorney fee award], in part because of the deeding of the land." Nothing in the court's oral pronouncements at the March 1, 2016 hearing or in the March 14, 2016 written order, however, suggest that by deeding the subject property in fee simple, the Edens were released from the obligation to make the $700 payments. And the Edens did not appeal the March 14, 2016 decision.

"It is elemental that it is not possible to have a unilateral modification of a contract previously entered into between the parties." *American Express Travel Related Svcs. Co. v. Berlye*, 202 Ga. App. 358, 360 (2) (414 SE2d 499) (1991)

9

(punctuation omitted); *Goldstein v. Ipswich Hosiery Co.*, 104 Ga. App. 500, 520 (30) (122 SE2d 339) (1961) (same). Although the trial court's Solomonic resolution of this dispute in its October 6, 2016 order has some appeal, the trial court simply was not authorized to modify the terms of the settlement agreement. And Jill's agreement at the March 1, 2016 hearing that the fee simple deed more than satisfied the requirement that the Edens transfer to her a life estate is not determinative. Regardless whether Jill Eden accepted the fee simple deed in lieu of a life estate, there is no evidence in the record to show that she agreed to forego the $700 payments in exchange for the greater deed; in fact, as shown above, at the March 1, 2016 hearing, Jill objected to any such argument and the trial court expressly stated that the Edens' other obligations remained the same. That the Edens' other obligations remained unchanged is consistent with the fact that the settlement agreement required any changes to be in writing. Thus, the Edens acted at their own peril by unilaterally preparing and recording a fee simple deed to the subject property in favor of Jill. The trial court therefore erred by construing the settlement agreement and enforcement order as providing that the Edens were authorized to forego the $700 payment requirement by unilaterally recording a fee simple deed to the subject property. Accordingly, although we affirm the trial court's denial of Jill's second motion for

contempt, we vacate the trial court's order to the extent that it held that the Edens were no longer responsible for the $700 payments.

2. Jill's second and third enumerations of error are mooted by our decision in Division 1.

*Judgment affirmed in part and vacated in part. McFadden, P. J., and Bethel, J., concur.*